# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

RUDOLPH V. ORANGE,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 5:14-cv-108

Criminal Case No. 5:11-cr-7

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Rudolph Orange ("Orange"), who is currently incarcerated at the United States Penitentiary-Lee in Jonesville, Virginia, filed a Motion to Vacate, Set Aside, or Correction his Sentence pursuant to 28 U.S.C. § 2255 contesting his sentence obtained in this Court.  (Doc. 1.)[1] The Government filed a Response, (doc. 7), and Orange filed a Reply.  (Doc. 9.)  For the reasons which follow, it is my **RECOMMENDATION** that Orange's Motion be **DISMISSED** in part and **DENIED** in part and this case be **CLOSED**.  I also **RECOMMEND** that Orange be **DENIED** a Certificate of Appealability and **DENIED** *in forma pauperis* status on appeal.

## BACKGROUND

Orange was indicted in this Court for conspiracy to possess with intent to distribute and to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); possession of 280 grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 3).  Indictment, United States v. Orange, et al., 5:11-cr-7 (S.D. Ga. June 8,

---

[1]  This Order is to be filed in Case Number 5:14-cv-108 and in Orange's original criminal action, Case Number 5:11-cr-7.  However, except as otherwise indicated, all record citations will be to Case Number 5:14-cv-108.

2011), ECF No. 1. Orange pleaded guilty to a lesser included offense of Count 2 on October 17, 2011. Change of Plea, <u>Id.</u>, (S.D. Ga. Oct. 17, 2011), ECF No. 172. In exchange, the Government agreed to dismiss the remaining counts of the indictment against Orange and to not seek a statutory sentence enhancement pursuant to 21 U.S.C. § 851. Plea Agreement, <u>Id.</u>, (S.D. Ga. Oct. 17, 2011), ECF. No. 181, p. 2. On this same date, the Honorable Lisa Godbey Wood, Chief Judge, conducted a change of plea, or Rule 11, hearing. Min. Entry, <u>Id.</u>, (S.D. Ga. Oct. 17, 2011), ECF No. 173.

Orange filed a Motion to Appoint New Counsel on January 3, 2012, and Orange's counsel, David McCrea, filed a Motion to Withdraw as Attorney on January 5, 2012. Mot., <u>Id.</u>, (S.D. Ga. Jan. 3, 2012), ECF No. 191; Mot., <u>Id.</u>, (S.D. Ga. Jan. 5, 2012), ECF No. 197. United States Magistrate Judge James E. Graham conducted a hearing on these Motions on January 12, 2012. Min. Entry, <u>Id.</u>, (S.D. Ga. Jan. 12, 2012), ECF No. 202. After the hearing, Judge Graham granted these Motions on this same date and appointed Kevin Gough to represent Orange. Order, <u>Id.</u>, (S.D. Ga. Jan. 12, 2012), ECF No. 203.

In the meantime, Orange also filed a Motion to Withdraw Plea of Guilty. Mot., <u>Id.</u>, (S.D. Ga. Jan. 5, 2012), ECF No. 196. Orange later filed an Affidavit in support of this Motion. Aff., <u>Id.</u>, (S.D. Ga. Apr. 26, 2012), ECF No. 227. After conducting a hearing on this Motion, Chief Judge Wood denied Orange's Motion on May 14, 2012. Min. Entry, <u>Id.</u>, (S.D. Ga. May 14, 2012), ECF No. 229.

Orange then filed a second Motion to Appoint New Counsel, and Magistrate Judge Graham conducted a hearing on this Motion on June 19, 2012. Magistrate Judge Graham denied Orange's Motion based on Orange's representation that he was satisfied with Gough's

representation. Mot., Id., (S.D. Ga. June 11, 2012), ECF No. 240; Min. Entry, Id., (S.D. Ga. June 19, 2012), ECF No. 244; Order, Id., (S.D. Ga. June 19, 2012), ECF No. 245.

Chief Judge Wood presided over Orange's sentencing hearing on September 24, 2012, and this hearing was concluded on October 29, 2012. Min. Entry, Id., (S.D. Ga. Sept. 24, 2012), ECF No. 259; Min. Entry, Id., (S.D. Ga. Oct. 29, 2012), ECF No. 263. Chief Judge Wood sentenced Orange to 324 months' imprisonment and entered judgment on October 30, 2012. J., Id., (S.D. Ga. Oct. 30, 2012), ECF No. 265.

Orange filed a direct appeal, asserting that this Court erred in denying his motion to withdraw his guilty plea because McCrea rendered ineffective assistance during the plea process. Orange also asserted his sentence was substantively unreasonable. Orange also filed a "Motion for Remand for Further Proceedings Consistent with Recent Supreme Court Decisions". Orange alleged that, in light of the decision in Peugh v. United States, ___ U.S. ___, 133 S. Ct. 2072 (June 10, 2013), his sentence violated the ex post facto clause of the Constitution. Orange also asserted that his sentence violated his Sixth Amendment right to trial because his sentence was based on facts not found by a jury, in violation of Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (June 17, 2013). The Eleventh Circuit Court of Appeals affirmed Orange's conviction and sentence. United States v. Orange, 536 F. App'x 952 (11th Cir. 2013). In so doing, the Eleventh Circuit found this Court did not abuse its discretion in denying Orange's motion to withdraw his guilty plea and that Orange's sentencing argument was foreclosed by the valid appeal waiver contained in his plea agreement. Id. at 954–55. The Eleventh Circuit also determined the Peugh decision was not applicable to Orange's case because his Guidelines' range would have been the same under either version of the Guidelines. Id. at 955 n.1.[2]

---

[2] In Peugh, the Supreme Court found that "there is an ex post facto violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version

In his Motion, Orange contends he received ineffective assistance of counsel in several ways. First, Orange asserts McCrea provided him incorrect advice about his sentence, which induced him to plead guilty. (Doc. 1, p. 4; Doc. 1-1, p. 8.) Orange contends counsel was ineffective for advising him to file an actual innocence affidavit in support of his motion to withdraw his guilty plea, which caused him to forego any opportunity he had to receive acceptance of responsibility. (Id. at p. 11.)[3] Orange also asserts Gough was ineffective on appeal for failing to raise a career offender enhancement challenge. (Id. at p. 12.) Orange avers his Guideline enhancement violates the ex post facto clause of the United States Constitution in light of the Peugh decision. (Id. at p. 17.) Finally, Orange asserts his motion to withdraw his guilty plea should be reheard based on the Alleyne decision. (Id. at p. 18.)

The Government maintains the Eleventh Circuit has already rejected Orange's assertions that his sentence violates the ex post facto clause and that his motion to withdraw his guilty plea should be reheard. Thus, the Government contends, Orange cannot raise these issues in his Section 2255 Motion. (Doc. 7, p. 13.) The Government also contends the collateral attack waiver contained in Orange's plea agreement bars these two grounds for relief. (Id. at pp. 13–14.) The Government further asserts Orange's counsel did not render ineffective assistance.

The Court addresses the parties' contentions in turn.

---

provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." ___ U.S. at ___, 133 S. Ct. at 2078.

[3] Orange originally asserted McCrea encouraged him to submit this affidavit, yet Orange filed this affidavit well after McCrea's representation ended. However, in his Reply to the Government's Response to his Motion, Orange clarifies his second attorney, Kevin Gough, advised him to submit the affidavit. (Doc. 9, p. 13.)

DISCUSSION

## I.  Issues Already Decided on Appeal

Orange avers the Supreme Court held in <u>Peugh</u> that a district court violates the ex post facto clause of the Constitution by using the Guidelines in effect at the time of sentencing rather than the Guidelines in place at the time of the offense if the newer Guidelines provide for a higher sentencing range.  (Doc. 1-1, p. 17.)  Orange states he filed a Motion for Remand with the Eleventh Circuit in light of the <u>Peugh</u> decision, and the Eleventh Circuit failed to address his Motion.  According to Orange, this Court's Guidelines range application resulted in a two level increase to his base offense level.  Orange also contends that, in pairing the <u>Peugh</u> decision with the decision in <u>Alleyne</u>, the career offender Guideline established a mandatory sentence.  Orange maintains he was not properly advised by the Court or counsel as to the application of the career offender enhancement under the Guidelines.  Orange contends his sentence was enhanced based on facts he never admitted to and which were used to increase his Guidelines range.  Thus, Orange asserts, he should have been permitted to withdraw his guilty plea.

The Government asserts the Eleventh Circuit considered and rejected both of these arguments and, accordingly, Orange cannot raise them for a second time here.

A district court is not required to reconsider claims of error that were raised and disposed of on direct appeal.  <u>Stoufflet v. United States</u>, 757 F.3d 1236, 1239 (11th Cir. 2014) (citing <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000)).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255, unless there has been an intervening change in the law.  <u>Nyhuis</u>, 211 F.3d at 1343; <u>Davis v. United States</u>, 417 U.S. 333, 342 (1974).  As the Seventh Circuit Court of Appeals has noted, "[W]e do not see how a federal prisoner—who must file his motion for relief under 2255

5

in the very court that convicted him—can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004).

Orange, through appellate counsel, raised his contentions based on the Peugh and Alleyne decisions with the Eleventh Circuit pursuant to his Motion to Remand. (Doc. 7-3.) The Eleventh Circuit addressed Orange's Motion for Remand and denied it. In so doing, the Eleventh Circuit stated, "Peugh is inapplicable to this case because Orange's guideline range would have been the same whether he was sentenced under the version of the guidelines in effect when he committed the crime or at the time of sentencing." Orange, 536 F. App'x at 955 n.1.

Contrary to Orange's assertions in his Section 2255 Motion, the Eleventh Circuit considered and rejected his assertions that the decisions in Peugh and Alleyne provide him with his requested relief. Though the Eleventh Circuit did not specifically mention Orange's citation to the Alleyne decision in denying his Motion for Remand, the implication is clear that the Eleventh Circuit rejected Orange's motion on this basis. Even if the Eleventh Circuit had not implicitly rejected this contention, Alleyne provides no relief for Orange.

"In Almendarez-Torres v. United States, 523 U.S. 224 [ ] (1998), the Supreme Court held that a prior conviction is not a fact that must be alleged in the indictment or found by a jury beyond a reasonable doubt." United States v. Rivas, 555 F. App'x 895, 897 (11th Cir. 2014) (citation omitted). "The Supreme Court's subsequent decisions in Apprendi v. New Jersey, 530 U.S. 466 [ ] (2000), Blakely v. Washington, 542 U.S. 296 [ ] (2004), and United States v. Booker, 543 U.S. 220 [ ] (2005), did not disturb the holding of Almendarez–Torres." Id. (citation omitted). "In Alleyne, the Supreme Court overturned Harris v. United States, 536 U.S. 545 [ ] (2002), and held that any factor that increases a defendant's mandatory minimum

sentence is an element of the crime that must be found by a jury." Id. "Alleyne, however, did not address prior-conviction sentencing enhancements. Instead, the Supreme Court explicitly stated that it was not revisiting the 'narrow exception to this general rule for the fact of a prior conviction.'" Id. (citation omitted). "As the Supreme Court has yet to overrule Almendarez-Torres, we continue to follow that case as binding precedent." Id. (citing United States v. Thomas, 242 F.3d 1028, 1035 (11th Cir. 2001) (noting that courts are "bound to follow Almendarez-Torres unless and until the Supreme Court itself overrules that decision")).

Orange's argument that, in light of Alleyne, his predicate offenses were elements to be submitted to a jury fails. Orange's prior convictions were not an element of his offense and need not have been determined by a jury. Furthermore, to the extent Orange seeks the retroactive application of Alleyne, he cannot do so. In Chester v. Warden, 552 F. App'x 887, 890 (11th Cir. 2014), the petitioner's "only available avenue for collateral relief in a [28 U.S.C.] § 2241 petition [was] through [28 U.S.C.]§ 2255(e)'s savings clause." The Eleventh Circuit stated, "because it is based on the Apprendi rule, Alleyne's rule does not apply retroactively on collateral review." Id. at 891 (citation omitted). The Eleventh Circuit, in considering Alleyne "for the purposes of [ ] direct appeal," stated that, "doing so is not intended to suggest that Alleyne applies retroactively to cases on collateral review. Alleyne was decided in the context of a direct appeal, and the Supreme Court itself has not expressly declared Alleyne to be retroactive on collateral review . . . [a]nd Alleyne has not been made retroactive through any combination of cases that necessarily dictate retroactivity." United States v. Harris, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014) (citation omitted)). Thus, Orange is not entitled to relief on these grounds, and these claims should be **DISMISSED**.[4]

---

[4] The Government also notes the collateral attack waiver in Orange's plea agreement forecloses his Peugh- and Alleyne-based claims. (Doc. 7, pp. 13–14.) However, the Government does not invoke this

## II.    Ineffective Assistance of Counsel Claims

Criminal defendants have a right to effective assistance of counsel.    Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise

waiver as a defense against Orange's ineffective assistance of counsel claims.  (Id. at p. 14.)  Because the Court finds these claims are barred from being raised on Orange's Section 2255 Motion because these claims were raised and decided on direct appeal, the Court need not address whether the appeal waiver provision contained in Orange's plea agreement also bars these claims.

of reasonable professional judgment.'" <u>LeCroy</u>, 739 F.3d at 1312 (quoting <u>Strickland</u>, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, we need not review the other prong." <u>Duhart v. United States</u>, 556 F. App'x 897, 898 (11th Cir. 2014). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690.

### A.    Plea Agreement

Orange avers the record "clearly indicates" his plea counsel (McCrea) "erroneously advised" him that he faced an advisory Guidelines range of 100 to 137 months' imprisonment, even though the correct range was much higher. (Doc. 1-1, p. 8.) Orange asserts McCrea never denied making this representation to him, and McCrea disputed whether the United States Probation Office had correctly calculated the range. Orange also asserts McCrea erroneously advised him that he was not eligible for the career offender enhancement, as McCrea mistakenly believed the Government's agreement not to seek a 21 U.S.C. § 851 enhancement precluded application of the Guideline enhancement. (<u>Id.</u> at p. 9.) Orange contends competent counsel would have been able to calculate the correct Guideline range in a matter of minutes by reviewing the drug quantity at issue and examining his previous convictions. Orange also contends that McCrea's errors rendered his guilty plea unknowing and involuntary, and without these errors, he would have proceeded to trial. (<u>Id.</u> at p. 10.)

The Government asserts the record shows Orange's guilty plea was knowingly and voluntarily entered, and he was fully aware of the sentence range he faced. (Doc. 7, p. 18.) The Government also asserts the Eleventh Circuit has already ruled on direct appeal that Orange's plea was knowing and voluntary and that counsel did not induce Orange's guilty plea.[5]

---

[5] Orange did not raise this issue as an ineffective assistance claim on appeal. Accordingly, this Court is required to address the voluntariness of Orange's plea in light of his ineffective assistance of counsel

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).

As part of his plea agreement with the Government, Orange agreed to plead guilty to a lesser included offense of possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and he was aware that he faced a term of imprisonment of at least five years but not more than forty years. Plea Agreement, United States v. Orange, et al., 5:11-cr-7, (S.D. Ga. Oct. 17, 2011), ECF No. 181, pp. 2, 7–8. Orange was also advised that the United States Probation Office would prepare a Presentence Investigation report ("PSI"), and all of Orange's conduct, including conduct relating to dismissed charges of the indictment and his criminal history, would be considered by the Court in determining his sentence. (Id. at p. 9.) In addition, Orange was advised "that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by defendant's counsel or the United States Attorney." (Id.) Orange signed this agreement and attested to having read and understood the agreement and its representations. (Id. at p. 13.)

---

claim within the context of Orange's Section 2255 Motion. Soto v. United States, 3:11-cv-1124-J-34MCR, 3:08-cr-204-J-34MCR, 2014 WL 2993800, at *3 (M.D. Fla. July 3, 2014) (a court must address the merits of a Section 2255 claim of ineffective assistance of counsel if it challenges the validity of a plea, even in light of a sentence appeal waiver provision contained in the plea agreement). The Court recognizes that such a discussion will result in discussion of facts which the Eleventh Circuit has already addressed.

At the outset of his Rule 11, or change of plea, hearing, Chief Judge Wood informed Orange that the purpose of that hearing was to "make sure you have an understanding of the case as it is presently pending against you, that you understand all of the rights that you waive or give up if I accept your guilty plea. I also want to make sure that there is, in fact, a factual basis for a plea of guilty and that you are here voluntarily[.]"  Change of Plea Hr'g Tr., United States v. Orange, et al., (S.D. Ga. Feb. 29, 2012), ECF No. 221, p. 3.  Orange told Chief Judge Wood that no one was making or forcing him to change his plea.  (Id. at pp. 3–4.)  After Orange was sworn in, Chief Judge Wood explained to Orange that he had the right to the assistance of counsel, the right to a trial by jury, the right to confront the Government's witnesses, the right to call witnesses on his behalf, and the right to choose whether to testify.  (Id. at pp. 7–8.)  Chief Judge Wood then explained to Orange that, if he decided to plead guilty, he was waiving all of those rights.  Orange stated he understood.  (Id. at p. 8.)  Orange also stated he had reviewed the plea agreement with McCrea and had discussed, at least generally, the advisory Guidelines.  (Id.)  Chief Judge Wood reviewed the charges included in the indictment and verified that Orange was pleading guilty to a lesser included offense of possession with intent to distribute more than 28 grams of cocaine base.  Orange indicated his understanding of the charges.  (Id. at pp. 11–12.)  Chief Judge Wood then stated, "Now the maximum possible penalty that I could ever impose for a violation of that particular offense is not less than five nor more than forty years imprisonment[.]  . . . Do you understand that's the maximum possible penalty?"  (Id. at p. 12.)  Orange stated he understood.  (Id.)  Chief Judge Wood also stated:

> I also want you to be familiar with the federal advisory sentencing guidelines. Those are not mandatory; they are advisory.  It is my duty under the law to calculate what the advisory guideline range is going to be in your case and to consider that range along with possible departures under the guidelines, and then all of the sentencing factors that are set forth in our federal sentencing statute, 18 U.S.C. § 3553.  Once I consider all of those things, it is going to result in the

imposition of a punishment in your case that is either within that advisory guideline range, perhaps below it, perhaps above it. Some of the most important features that go into arriving at that calculation are your criminal history, your actual conduct, and whether you came here and told the truth and accepted responsibility for your conduct. Those are some of the major ones. There are others that go into it. Do you understand that?

(Id. at pp. 13–14.) Orange responded that he understood. Chief Judge Wood then inquired if anyone had promised Orange an exact sentence, and he said no one had. Chief Judge Wood stated, "Because that would be improper. At this point, all anybody can do is give you their best estimate about what your guideline range might be, and it would be just that, an estimate, and would in no way be binding on the Court." (Id. at p. 14.) After this exchange, Chief Judge Wood asked Orange whether he wanted to plead guilty to the lesser included offense because he was "in fact, guilty[.]" (Id.) Orange stated that he did.

The Government summarized the plea agreement and the parties' obligations thereunder, and Orange averred no one had made him any promises outside of that plea agreement. (Id. at p. 15.) Chief Judge Wood determined Orange's "offer to plead guilty is made knowingly with an appreciation of the rights that he waives. I find that his offer to plead guilty is voluntary." (Id. at p. 18.) Orange agreed with Chief Judge Wood's determination, and she also determined Orange had not been coerced or influenced into offering to plead guilty. (Id.) The Government was asked to provide a factual basis for Orange's plea, and the only dispute offered to the factual basis of Orange's plea was the amount of drugs attributable to him. (Id. at pp. 18–20.) McCrea agreed that the amount was over 28 grams but only "around 500[ ]" grams. (Id. at p. 21.)

Orange then filed a Motion for New Counsel, and Magistrate Judge Graham conducted a hearing on this Motion. Orange stated during this hearing that he received his PSI, which was the first time he was made aware that his sentence would be enhanced based on his prior convictions. Mot., United States v. Orange, et al., (S.D. Ga. Feb. 29, 2012), ECF No. 222, pp. 3–

4. According to Orange, he understood he faced a minimum of five years' imprisonment, but he also believed, from what McCrea told him, his prior convictions would not be used to enhance his sentence because the convictions were too old. (Id. at p. 3.) Orange also stated he thought his Guidelines range would be a little over 100 months' imprisonment, yet he actually was facing a sentence range of 295 to 365 months' imprisonment. Orange further asserted the plea agreement stated that the Government was not going to seek an enhancement. (Id. at p. 4.) After hearing from McCrea, Magistrate Judge Graham granted Orange's Motion and appointed a new attorney, Kevin Gough, to represent him. (Id. at pp. 7–10); Order, Id., (S.D. Ga. Jan. 12, 2012), ECF No. 203.

Orange filed a Motion to Withdraw his Guilty Plea on January 5, 2012.[6] Mot., United States v. Orange, et al., (S.D. Ga. Jan. 5, 2012), ECF No. 196. Nearly five months later, and with the assistance of Gough, Orange filed an affidavit in support of his Motion to Withdraw. Aff., Id., (S.D. Ga. Apr. 26, 2012), ECF No. 227. In this affidavit, Orange declared he was "not guilty" of any count of the indictment and that any statements he made previously which could have been construed as an admission of guilt were made "under duress and coercion of prior counsel." (Id. at pp. 1–2.) Orange also declared McCrea advised him to plead guilty to a crime he did not commit so he could avoid a lengthy prison sentence. (Id. at p. 2.) Orange attested that McCrea did not adequately advise him about the likely consequences of his plea or of his criminal history and that McCrea should have told him he would have qualified as a career offender. (Id. at p. 5.) Orange continued professing his innocence and ended his affidavit by declaring he "would rather risk [a potential life sentence] than plead guilty to a crime that I did not commit." (Id.)

---

[6] At the time this Motion was filed, McCrea still represented Orange. This Motion was filed contemporaneously with McCrea's Motion to Withdraw as Counsel. Mot., United States v. Orange, et al., (S.D. Ga. Jan. 5, 2012), ECF No. 197.

Chief Judge Wood conducted a hearing on this matter on May 14, 2012. Hr'g Tr., <u>United States v. Orange, et al.</u>, (S.D. Ga. Sept. 23, 2012), ECF No. 256. Chief Judge Wood allowed Gough to address the Court on Orange's behalf, and Gough spoke to the Court about sentencing and the career offender enhancement. In response, Chief Judge Wood stated:

> Let me stop you there and ask you about that point because if you look at the Rule 11 plea colloquy—it is approximately thirty minutes long, twenty-two pages of transcription. And there is, as you would expect, the confirmation under oath with Mr. Orange that he understands that any estimated sentence that anybody might quote to him is just that, an estimate, and it is in no way binding upon the Court; that in his case, he understands that there is a minimum of five years and a maximum of forty years; and that within those parameters, five to forty years, the Court is going to look at the advisory guideline range, consider possible departures, and all of the sentencing factors that are set forth in 18 [U.S.C.] § 3553; and that any estimate somebody gives is only an estimate. I could understand withdrawing the plea if that were not made clear under oath.
> . . . .
>
> It also is in conflict with some of the portions of your client's affidavit. How do you explain, for example, the under oath declaration twice, once on I believe page 8 and once on page 14 and 15, his assertion that he was, in fact, guilty[?] And his entry in the affidavit is saying that he has always maintained his innocence. I find it difficult to reconcile those two under-oath statements, aside from having an independent recollection of him standing where you are and saying, "I'm guilty" under oath. . . .
>
> It is hard for me to reconcile that with an affidavit that says, 'I have always maintained my innocence.'

<u>Id.</u> at pp. 5–6. In assessing whether there was "a fair and just reason" that Orange was entitled to withdraw his guilty plea, Chief Judge Wood informed Gough and Orange that she was looking at whether Orange had "close assistance of counsel", whether Orange's plea was knowing and voluntary, whether judicial resources would be conserved, and whether the Government would be prejudiced if Orange were allowed to withdraw his plea. (<u>Id.</u> at 7.) In looking at whether Orange's plea was given knowingly and voluntarily, Chief Judge Wood declared, "I will state unequivocally for the record, that is not what happened during Mr. Orange's plea. In fact, during

that plea colloquy, he stated quite clearly that he was under no form of duress. I asked twice, once not under oath and once under oath. Both times he gave the same answer that is different from this recent affidavit where he says that he actually was under duress by his attorney. While he was under oath before me, he said he was not." (<u>Id.</u> at p. 8.) After listening to the Government and Gough, Chief Judge Wood found:

> specifically that on October 17th, 2011, the Defendant, Mr. Rudolph Orange, appeared before me requesting to plead guilty to the lesser included offense of Count Two of the Indictment. After a complete Rule 11 colloquy that lasted approximately thirty minutes and occupies some twenty-two pages of transcription, I agreed to accept the guilty plea that he wanted to enter, and I adjudged Mr. Orange guilty.
>
> During that plea colloquy, he stated that no one was leaning on him or pressuring him or forcing him to plead guilty. He stated that twice, once under oath and then once before he was placed under oath. He stated that he understood if he pled guilty and I decided to accept his plea that there would be no trial.
>
> He expressed satisfaction with his attorney and had no complaints about him whatsoever. I understand that his dissatisfaction came later, though, after he received the Presentence Report draft.
>
> He stated unequivocally that he understood he faced at least five years and up to forty years in prison.
>
> Importantly, he confirmed that no one had promised him an exact sentence, and that he understood that anyone could give him an estimate but it would be only that, an estimate, that would, in no way, be binding upon the Court.
>
> Importantly, he said he wanted to plead guilty because he was, in fact, guilty. The under-oath portion of that sworn statement of guilt is on Page 15 of the plea colloquy.
>
> Mr. Orange has now sought to withdraw his plea agreement, and pursuant to Rule 11(d) and the Eleventh Circuit cases interpreting it, I deny that motion. The Defendant has not shown a fair and just reason for requesting the withdrawal. His affidavit is in conflict with the terms of the plea agreement and the transcript of the plea colloquy.
>
> Looking at the totality of circumstances, as I am directed to do, the motion is denied based on these four factors and all of the others.

Having listened to what counsel has argued today and having read the briefs that were submitted, I find, first, that it is clear from the record that he had close assistance of experienced counsel who met with him multiple times, reviewed the facts, the law, the pertinent documents with him. He understand [sic] the nature of the charges against him, the consequences of his plea, the essential elements that the Government would have to prove.

Second, his plea was most certainly knowing and voluntary. I specifically found so back in October, and recall doing so, and have now read back over the confirmation of that.

Third, I do find that judicial resources would not be conserved by permitting the withdrawal.

Finally, there is some prejudice to the Government, although that is not, in my mind, the most important factor at all. There is some minimal prejudice to the Government necessitated by the passage of time and the scattering of witnesses.

For those reasons, I will deny the petition to withdraw the plea.

(Id. at pp. 25–27.)[7]

As the Eleventh Circuit noted, the "failure to advise a defendant of his eligibility as a career offender is not *per se* deficient and must be determined by the facts and circumstances of the case." Orange, 536 F. App'x at 954 (citing United States v. Pease, 240 F.3d 938, 941–42 (11th Cir. 2001)).  In Pease, the defendant pleaded guilty to a conspiracy count pursuant to a written plea agreement containing an appeal waiver provision.  240 F.3d at 940.  The defendant was informed at the Rule 11 hearing that the charge to which he was pleading guilty carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life in prison.  Id.  Pease's PSI revealed that the Probation Office recommended Pease be sentenced as a career offender under United States Sentencing Guideline § 4B1.1 due to his prior convictions for delivery of cocaine and for resisting arrest with violence.  Id.  Pease objected during the

---

[7] Orange also filed another Motion to Appoint New Counsel on June 11, 2012, and asserted Gough was ineffective. Mot., United States v. Orange, et al., 5:11-cr-7, (S.D. Ga. June 11, 2012), ECF No. 240. This Motion was dismissed on June 19, 2012, based on Orange's assertions at the hearing on his Motion before Magistrate Judge Graham that he was satisfied with Gough's representation. Id. at ECF Nos. 244, 245.

sentencing hearing because his attorney did not inform him he would be sentenced as a career offender and sought to withdraw his guilty plea. Id. During the hearing on his motion to withdraw his guilty plea based on counsel's alleged ineffectiveness, Pease asserted he relied on counsel's prediction that his potential sentence would be five to ten years' imprisonment because his counsel failed to uncover Pease's prior convictions. Id. at 941. The Eleventh Circuit rejected Pease's assertion that his plea was involuntary because he did not understand the severity of what his sentence under the plea agreement could be. Id. In so doing, the Eleventh Circuit observed "it is clear from the transcript of the plea hearing that the magistrate judge repeatedly informed Pease he could not rely on his counsel's prediction of his sentence, that the crime to which he pleaded guilty had a mandatory minimum sentence of ten years and a maximum of life imprisonment, and ultimately that 'the sentence actually imposed by the Court may be different from any estimate or prediction about [his] guideline sentence that anybody [had] provided [Pease], including [his] attorney.' Pease knew at the time he pleaded guilty that his sentence might be life imprisonment, a more severe sentence than he actually received." Id. (internal citation omitted) (alterations in original).[8] The Eleventh Circuit rejected Pease's claim that his counsel's ineffectiveness rendered his guilty plea involuntary and noted his reliance on counsel's misrepresentations caused him to disregard explicit statements from the court. Id.

The Pease case is on all fours with the circumstances of Orange's claims that McCrea was ineffective by improperly estimating Orange faced a sentence of 100 to 137 months' imprisonment and that McCrea's ineffectiveness rendered his guilty plea involuntary. The Court recognizes McCrea essentially admitted to giving Orange erroneous advice, but this does not render McCrea's assistance ineffective. Chief Judge Wood informed Orange during the Rule 11

---

[8]   In making this determination, the Eleventh Circuit distinguished the facts of Pease's case with those involved in Esslinger v. Davis, 44 F.3d 1515, 1529 (11th Cir. 1995), because the defendant in Esslinger was not informed of the statutory mandatory minimum. Pease, 240 F.3d at 941 n.2.

proceeding he faced a minimum sentence of five years and a maximum sentence of forty years' imprisonment. Hr'g Tr., United States v. Orange, et al., 5:11-cr-7, (S.D. Ga. Feb. 29, 2012), ECF No. 221, p. 12. Chief Judge Wood also informed Orange of the existence of the Guidelines and that one of the factors contemplated under the Guidelines would be Orange's criminal history. (Id. at pp. 13–14.) Orange affirmed he understood and wished to plead guilty. (Id. at p. 14.) While it came to pass that Orange's sentence was enhanced as a career offender under the Guidelines to encompass his prior convictions, he was advised his sentence could be as high as forty years' imprisonment. His sentence of 324 months' imprisonment falls well below the maximum sentence he could have received by statute and of which he was informed by the Court. The fact Orange qualified as a career offender and McCrea did not properly advise him of the possibility of this enhancement—while "certainly not laudatory"—does not render McCrea's assistance ineffective. Pease, 240 F.3d at 941–42 (citing Thomas v. United States, 27 F.3d 321, 325 (8th Cir. 1994) (counsel's failure to inform client of possibility of sentence enhancement as career offender does not fall below objective standard of reasonableness)); see also Young v. United States, 936 F.2d 533, 536 (11th Cir. 1991) (the Government did not have to follow the notice requirements of Section 851 to use defendant's prior convictions to enhance his sentence under the Guidelines as a career offender, as long as the enhanced sentence fell within the permissible statutory range). Orange's assertion that his counsel was ineffective during the plea stage, rendering his guilty plea involuntarily made, is belied by the record before the Court and is

without merit.[9]   Orange is not entitled to his requested relief on this ground.   Orange's ineffective assistance of plea counsel claims should be **DENIED**.[10]

### B.   Appellate Counsel's Failure to Challenge Previous Convictions Used to Enhance Orange's Sentence

To the extent Orange argues his counsel's performance on appeal was deficient, such claim is "governed by the same standards applied to trial counsel under Strickland."   Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).   "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but

---

[9]  Even in his Reply, Orange states he understood his sentence range would be at least five years' and up to forty years' imprisonment by statute.  (Doc. 9, pp. 4, 10.)  He cannot now claim that his sentence, which fell within the statutory limits, is somehow incorrect.

[10]  The Eleventh Circuit recently issued a decision with circumstances similar to those present before this Court.  In Diveroli v. United States, No. 14-11576, 2015 WL 5915846, at *4 (11th Cir. Oct. 9, 2015), the Eleventh Circuit stated, "In the context of guilty pleas, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  (citing Hill, 474 U.S. at 58–59).  "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Id. (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  "Because the district court determined that there was not a reasonable probability that Diveroli would have insisted on going to trial, any error 'had no substantial influence on the outcome, and . . . reversal is not warranted.'"  Id. at *5 (quoting United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990)).  The Eleventh Circuit affirmed the district court's determination that Diveroli was not entitled to his requested relief.  Specifically, the Eleventh Circuit noted that, to obtain relief, "Diveroli had to 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'"  Id. at *6 (quoting Padilla, 559 U.S. at 372).  The Eleventh Circuit also noted "the record establishes that Diveroli faced overwhelming evidence of guilt and had no valid affirmative defenses.  It would not have been rational for Diveroli to reject his plea bargain.  In exchange for Diveroli pleading guilty to the conspiracy count, the government dismissed 83 substantive counts against him and agreed to recommend a 2 or 3 level decrease for acceptance of responsibility.  The conspiracy charge had a maximum sentence of only five years of imprisonment, . . ., but the dismissed wire-fraud charges had maximum sentences of twenty years of imprisonment[.]  Diveroli could not establish that it would have been rational to reject this plea agreement given its favorable terms and his near-certain conviction."  Id.  Like Diveroli, Orange cannot claim a reasonable person would have declined to plead guilty under the circumstances he faced.  Although Orange received a sentence which he claims was significantly higher than what he believed he would receive by pleading guilty, his sentence is still significantly lower than what he could have received had he gone to trial and was convicted of the offenses for which he was indicted—a potential life sentence.  Penalty Certification, United States v. Orange, et al., 5:11-cr-7, (S.D. Ga. June 8, 2011), ECF No. 2.  In exchange for his plea of guilty, the Government dismissed the substantive counts of the indictment.  Additionally, Orange filed objections to nearly every factual paragraph of the PSI, yet Chief Judge Wood found his objections to be without merit.  Sentencing Hr'g Tr., Id., (S.D. Ga. Jan. 9, 2013), ECF. No. 275.

for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y. Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285–86 (2000)). Appellate counsel is not ineffective for failing to raise a meritless claim on appeal. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001). "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." Jones v. Sec'y, Dep't of Corr., 487 F. App'x 563, 568 (11th Cir. 2012) (citing Nyhuis, 211 F.3d at 1344). "An attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal." Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the Constitution or our interpretation of that document requires an appellate attorney to raise every 'colorable' claim suggested by a client.").

In order to determine the nature of a prior conviction for purposes of the career offender provision, a sentencing court may, in addition to the fact of conviction and the prior offense's statutory elements, look at "any charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." United States v. Chitwood, 676 F.3d 971, 976 (11th Cir. 2011); see also United States v. Ortiz, 413 F. App'x 114, 117 (11th Cir. 2011) (citing to Shepard v. United States, 544 U.S. 13, 16 (2005)). Courts are also able to review "other comparable judicial records." Id. at 118. "It is [these] documents that are referred to as 'Shepard-approved materials.'" Dunn v. United States, No. CR 110-358, 2013 WL 1207552, at *6 (S.D. Ga. Feb. 28, 2013), adopted by 2013 WL 1208103 (S.D. Ga. Mar. 25, 2013).

"A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of

conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). "A sentencing court cannot ignore or discount a prior conviction that has not been invalidated in a prior proceeding, unless there was an unwaived absence of counsel in the proceedings resulting in that conviction." Rodriguez v. United States, 572 F. App'x 884, 887 (11th Cir. 2014) (citing United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997)).

      1.     Florida Conviction

Orange asserts Gough objected during sentencing to the use of his prior conviction under Florida law for violation of Florida Statute Section 893.135(1)(b) to enhance his sentence under the career offender provision. (Doc. 1-1, p. 12.) Orange avers this issue was preserved to raise on appeal since Gough raised it before this Court at sentencing, yet Gough failed to raise this as an issue on appeal. According to Orange, "there is a strong presumption that the outcome of the appeal may have been different[ ]" had Gough raised this as an appellate issue. (Id.) Orange maintains Eleventh Circuit precedent indicates the Florida statute under which he was convicted is broader than the "controlled substances offense" and "serious drug offense" definitions contained in the career offender provisions of the Guidelines and the Armed Career Criminal Act. Orange avers it is unclear whether the documents presented during sentencing as to this

conviction comported with the requirements of <u>Shepard v. United States</u>, 544 U.S. 13 (2005). (<u>Id.</u> at p. 14.)

The Government posits Gough was not ineffective for failing to argue on appeal that Orange's Florida conviction for drug trafficking should not have qualified for the career offender enhancement. The Government asserts the Probation Officer verified Orange's Florida conviction through the information and sentencing document, which he presented to the Court during sentencing. (Doc. 7, pp. 26–27.) The Government contends the Court specifically found the submitted documents established Orange's conviction could be used as a prior conviction. In addition, the Government alleges Orange presents no evidence whatsoever that his conviction under Florida law did not qualify as a controlled substance offense or that his appellate attorney should have known it did not qualify. (<u>Id.</u> at p. 28.)

Orange was convicted of trafficking over 400 grams of cocaine in Florida in 1993 after he pled guilty to that offense while counseled. At the time of his conviction, a fifteen-year mandatory sentence applied to violations of Section 893.135(1)(b) under Florida law involving more than 400 grams of cocaine. Fla. Stat. Ann. § 893.135(1)(b)1.c.[11] In determining whether Orange's Florida conviction qualified as a prior conviction for Guidelines enhancement purposes, the Probation Officer determined that the charging and sentencing documents in that case confirmed that Orange pled guilty to knowingly delivering and/or knowingly in actual or constructive possession of over 400 grams of cocaine or any mixture containing cocaine." (PSI, ¶ 52.) The probation officer had a certified copy of the <u>Shepard</u> documents for this conviction, which he provided to the Court and which were marked as an exhibit. Ex. List, <u>United States v. Orange, et al.</u>, 5:11-cr-7 (S.D. Ga. Oct. 30, 2012), ECF No. 264; Sentencing Hr'g Tr., <u>Id.</u> (S.D.

---

[11] Under the current version of this statute, a convicted offender still faces a mandatory minimum term of 15 years' imprisonment. Fla. Stat. Ann. § 893.135(1)(b)1.c.

Ga. Jan. 29, 2013), ECF No. 275. The Court properly deemed this conviction to be a qualifying prior conviction for career offender enhancement purposes. Consequently, Orange has not met his burden of showing either Gough performed deficiently by failing to argue his Section 893.135 conviction did not qualify as a "controlled substance offense" under § 4B1.2(b) or, had his counsel made that argument, the result on appeal would have been different. Rodriguez, 572 F. App'x at 888–89 (upholding the use of the defendant's conviction under Section 893.135(1)(b) as a basis for the career offender enhancement) (internal citations omitted).

2. Georgia Conviction

As for the Georgia conviction used to enhance his sentence, Orange asserts the original documents have been lost or misplaced, and it could not be determined whether he was counseled during this prosecution. Orange contends Gough objected to the use of these incomplete documents as support for use of the Georgia conviction to enhance his sentence, yet Gough failed to raise this issue on appeal. (Id. at p. 16.)

The Government asserts that Orange's contentions about his Georgia conviction are without merit. Specifically, the Government avers the Probation Officer presented the Shepard documents during sentencing, and the Court was satisfied after examination that Orange's Georgia conviction qualified as a prior conviction. (Doc. 7, p. 29.) In addition, the Government asserts it has obtained a copy of this conviction, and the full copy shows that Orange was represented by counsel at his plea and sentencing. (Id. at p. 30.)

Orange was convicted in Georgia in 1991 for possession with intent to distribute cocaine and possession with intent to distribute cocaine within 1000 feet of a school after he pled guilty to these offenses. (Doc. 7-5, pp. 3–4, 6.) The Shepard documents indicate Orange was represented by counsel, and he was sentenced to five years' imprisonment. (Id. at pp. 4, 6.) The

Court notes Orange's assertion that it appears his attorney's signature is not that of his attorney. However, this is immaterial to a finding that these convictions constitute qualifying prior convictions for purposes of the career offender provisions. The Court accepted these documents as appropriate for <u>Shepard</u> purposes. Sentencing Hr'g Tr., <u>United States v. Orange</u>, 5:11-cr-7, (S.D. Ga. Jan. 29, 2013), ECF. No. 275. Orange's Georgia conviction properly constitutes a prior conviction under the career offender provision of the Guidelines. Orange fails to show that, had Gough raised as an issue on appeal the inclusion of this prior conviction was improper under the career offender provision, the result on appeal would have been different.

In sum, Orange fails to show that his appellate counsel was ineffective for failing to raise issues on appeal concerning the use of his prior convictions under Florida and Georgia law for purposes of the career offender provision of the Sentencing Guidelines. Orange is not entitled to his requested relief, and his ineffective assistance of appellate counsel claims should be **DENIED**.

## II. Leave to Appeal *In Forma Pauperis* and Certificate of Appealability

The Court should also deny Orange leave to appeal *in forma pauperis,* and he should be denied a Certificate of Appealability ("COA"). Though Orange has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis supplied); <u>see also</u>, FED. R. APP. P. 24(a)(3) (trial court may certify that appeal of party proceeding in forma pauperis is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken in forma pauperis if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an in forma pauperis action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196,

1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the parties' pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.

CONCLUSION

Based on the foregoing, I **RECOMMEND** that Orange's Motion to Vacate, Set Aside, or Correct his Sentence, filed pursuant to 28 U.S.C. § 2255, be **DISMISSED** in part, and **DENIED** in part, and that this case be **CLOSED**. I also **RECOMMEND** that Orange be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Orange and the Government.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of October, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA